UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
AGATHA BROWN,

        Plaintiff,

   -against-

SIXTEEN, INC.,

        Defendants.

--------------------------------x
SIXTEEN, INC.,

        Counterclaim-Plaintiff,

   -against-

AGATHA BROWN,

        Counterclaim-Defendant.

--------------------------------x



02 Civ. 4630 (DAB)
MEMORANDUM AND ORDER

DEBORAH A. BATTS, United States District Judge.

In her Complaint filed on June 17, 2002, Plaintiff Agatha
Brown ("Brown") alleges that Defendant Sixteen, Inc. ("Sixteen"),
infringed upon her AGATHA trademark.[1]  Specifically, Brown has
alleged violations of the Lanham Act under: 15 U.S.C. §§
1114(1)(a) and 1125(a) for trademark infringement.

---

[1] On November 3, 2003, a judgment on the pleadings pursuant
to Rule 12(c) of the Federal Rules of Civil Procedure was granted
in favor of Fross Zelnick Lehrman & Zissu, P.C.

1

Now before the Court is Defendant's Second Motion for Summary Judgment.  For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED in its entirety.


## I. UNSEALING & PROCEDURAL DEFICIENCIES

Plaintiff mistakenly filed her entire opposition under seal, including her 56.1 response and her memorandum of law.  After review of the documents under seal the Court finds that there is in fact no information that requires filing under seal.  Consequently, Docket entry no. 119 is hereby UNSEALED.

In addition to this error, Plaintiff failed to submit courtesy copies to Chambers as required by this Court's Individual Practices, and failed to include citations to the record in her Rule 56.1(b) Statement.  See Local Rule 56.1(d) (stating "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)".)  However, even assuming that all of the unsupported factual allegations in her Rule 56.1 statement are true, Plaintiff would still fail as a matter of law; therefore, the Court need not rule on the weight of her procedural deficiencies.

2

## II. BACKGROUND

The Court presumes familiarity with the facts in Judge Keenan's opinion set forth at <u>Brown v. Quiniou</u>, 744 F.Supp. 463 (S.D.N.Y. 1990), Judge Constance Baker Motley's Memorandum and Order of May 23, 2003 (02 Civ. 4630, Dkt. No. 42), and this Court's November 3, 2005 Memorandum and Order (02 Civ. 4630, Dkt. No. 76).  However, the following facts bear repeating.

### Plaintiff's Business

Plaintiff, Agatha Brown, is a clothing designer by trade. (Def. 56.1 Stmt. at ¶ 25.)  In 1983, after many years of designing clothing products for others, Brown opened a showroom in New York City in order to market her own apparel designs under various trademarks including "AGATHA," "AGATHA BROWN," "AGATHA B," and "AGATHA KNITS."  (<u>Id.</u>)  In 1988, after a dispute with her investors, Brown closed her New York showroom, and in 1989 moved to Aruba.  (<u>Id.</u> at ¶¶ 26, 27.)  In January 1990, Plaintiff opened a retail apparel and accessories store in Aruba selling AGATHA branded products as well as other designer labels to tourists visiting the island.  (<u>Id.</u> at ¶ 28.)  Plaintiff visited the United States approximately eighteen times between 1989 and 1997. (<u>Id.</u> at ¶ 32.)  In 2007, Plaintiff closed up her operations in

3

Aruba and moved back to the United States where she operates her business through mail order and the internet.  (<u>Id.</u> at ¶ 29.)

### Defendant's Business

In 1974, Michel Quiniou opened a retail boutique in Paris, France which sold costume jewelry and related accessories.  (<u>Id.</u> at ¶ 1.) The boutique was called "AGATHA" and the products were sold under the trademark "AGATHA".  (<u>Id.</u> at ¶ 2; Quinou Decl. at ¶¶ 3, 4.)  He subsequently opened additional boutiques elsewhere in Paris and throughout France.  (<u>Id.</u> at ¶ 3.)  In 1986, Quinou formed Defendant Sixteen, Inc. in the United States, for the purpose of opening and operating AGATHA retail stores in the United States.  (<u>Id.</u> at ¶ 4.)  In or about November 1987, Sixteen opened up its first AGATHA retail store at 610 Fifth Avenue at Rockefeller Center in New York City.  (<u>Id.</u>)  Thereafter, additional retail stores were opened in New York City and elsewhere in the country, including New Jersey and California.  (<u>Id.</u> at ¶¶ 6,7.)  Further, an affiliated company, "Agatha Diffusion" opened retail stores throughout the United States including Texas, Nevada, Florida, Hawaii, and Massachusetts.  (<u>Id.</u> at 8.)

When Sixteen first opened its retail store in Rockefeller Center in 1987, Sixteen was using the AGATHA mark in a "Gothic

4

font style" and paired with the word "Paris".  (Id. at ¶ 11.)  In

or about 1988, Quinou "decided to update the appearance and

change the look of the AGATHA mark from the Gothic font to a more

Avant Garde font style."  (Quiniou Decl. at ¶¶ 10, 11.)  Quiniou

states that he "felt that the Gothic font, which was first

introduced in the 1970s, looked antiquated and [he] wanted the

mark to take on a more refreshing and cosmopolitan look."  (Id.

at ¶ 12.)  Then in or about 1989 Sixteen began using the mark

"AGATHA" without the word "Paris".  (Id. at ¶ 13.)[2]  Plaintiff

disputes that Defendant began using the "Agatha" mark without the

term "Paris" in 1989.  (Def. 56.1 Stmt. at ¶ 20.)  Defendant

argues that Plaintiff conceded in her deposition that their use

of the Avante Garde form, without Paris, began in 1991.  (Pl.

Dep. 251:23-252:3, "I never would have imagined that he would

change the font to one almost identical to mine and he did so

three weeks before I signed that stipulation without my knowledge

in France, never used the other one again ever.")  Plaintiff

argues that this statement is taken out of context, and is not a

concession.  (Pl. 56.1 Stmt. at ¶ 20.)[3]  Defendant states that,

--------------------------------------------------

[2]  Plaintiff disputes the Defendants ever used the word mark
AGATHA standing alone.  (Pl. 56.1 Stmt. at ¶¶ 11-14.)  Plaintiff
alleges that she only learned of Defendant's font change in 1997.
Compare Def. 56.1 Stmt. at ¶ 20 with Plaintiff 56.1 Stmt. at 20.

[3]  Defendant has supplied photos that appear to be dated in
January 1995 which show the facades of the Rockefeller Center and

since 1989, Sixteen has continuously used the AGATHA mark in the Avant Garde font without the term "Paris".  (<u>Id.</u> at ¶ 14.)

In January 2007, due to financial difficulties, Sixteen and all other Agatha Diffusion affiliates in the United States closed their respective retail store operations.  (<u>Id.</u> at ¶ 22.) However, products bearing the AGATHA mark continue to be sold in the United States via an online website located at <u>www.agatha.fr.</u> (<u>Id.</u>)

### Plaintiff's Litigation

In December 1987 Plaintiff brought suit against Quiniou in this District for trademark infringement and related causes of action.  In that action, Judge Keenan denied a Motion for Summary Judgment brought by Brown.  <u>Brown v. Quiniou</u>, 744 F. Supp. 463, 471 (S.D.N.Y. 1990).  Judge Keenan held that (1) genuine issues of material fact existed, precluding summary judgment for Brown, on whether Quiniou's use of the AGATHA trademark posed likelihood of confusion among customers; (2) "Agatha" was not so uncommon a name as to justify departure from general rule that personal name was descriptive and required proof of secondary meaning in order to justify protection; and (3) the record did not show that

---

Madison Avenue locations and display "Agatha" in the Avante Garde font, without the term Paris.  (Def. Ex. 26, 27.)

"Agatha" had acquired secondary meaning or distinctiveness among relevant consumers necessary to justify summary judgment for fashion designer under New York antidilution statute.  <u>Quiniou</u>, 744 F.Supp. at 463.  Among the factual findings made by Judge Keenan, he noted, in relevant part, that the record of Plaintiff's advertising demonstrated (at that time) "Agatha's prominence as a clothes and accessories designer, but in no way indicates that Agatha Brown, Inc. marketed jewelry or fragrances."  <u>Brown v. Quiniou</u>, 744 F.Supp. At 465 -466.[4] Subsequently, Brown withdrew her case with prejudice.[5]

Plaintiff filed this suit in June 2002 againt Michel Quiniou, Agatha Diffusion, Sixteen Inc., and the law firm of Fross Zelnick Lehrman & Zissu P.C.  (Compl. <u>generally</u>.) Plaintiff alleged nine causes of action including, <u>inter</u> <u>alia</u>, trademark infringement and unfair competition under the Lanham Act.  (Compl. at ¶¶ 143-193.)  The case was declined as related

---

[4] He does however note that, "In preparation for her Fall 1988 collection, Agatha decided to expand her selection of products to include costume jewelry and cosmetics. Specimens of each are included in Exhibits M and N, respectively, to the Agatha declaration. Agatha has an application pending in the Patent and Trademark Office for registration of the mark AGATHA in connection with jewelry products, cosmetics and handbags." <u>Brown v. Quiniou</u>, 744 F.Supp. at 466.

[5] The parties have not submitted along with the Stipulation and Order of Dismissal any accompanying affidavit detailing any terms of the dismissal.  (<u>See</u> Divino Decl. in Support of Defendants' 12(b)(6) Motion, Ex. 5.)

by Judge Keenan, and assigned to this Court.  The case was then
reassigned to Judge Constance Baker Motley.  Defendants,
including Quiniou, moved to dismiss Plaintiff's Complaint,
stating that the claims listed therein were or could have been
raised in the 1987 action.  (See generally Memo. of Law in
Support of Agatha Diffusion and Sixteen's 12(b)(6) Motion, Sept.
20, 2002.)  In an Order dated April 15, 2003, Judge Motley denied
Quiniou et al.'s Motion to Dismiss.  (Apr. 15, 2003 Order.)

Judge Motley found that "[t]he essence of Brown's instant
claims . . . are based on facts which occurred after she decided
to withdraw her 1987 lawsuit and which did not spring from the
set of facts upon which her previous action was based.  While the
words of the 1987 Complaint and the instant Complaint are
similar, the latter pleads facts which sufficiently indicate that
Brown is not challenging Quiniou et al.'s mere use of the mark
'AGATHA', but rather their use of the mark in a style that is
much closer to her own make than the one that Judge Keenan
considered . . . ."  (Apr. 15, 2003 Order at 5-6.)  Judge Motley
noted that although courts are bound to accept allegations in
complaints as true on motions to dismiss, Defendants would not be
barred from later supplementing the record to show that Brown
could have raised her present claims in the 1987 action.  (Apr.
15, 2003 Order at 5, n.5.)

On May 22, 2003, Judge Motley dismissed Plaintiff's claims against Defendants Quiniou and Agatha Diffusion pursuant to Fed. R. Civ. P. 12(b)(5) for failure to serve.  On May 29, 2003, Defendant Sixteen Answered and alleged eighteen counterclaims, including, inter alia, False Designation of Origin under the Lanham Act, common law unfair competition and misappropriation, and declaratory judgment.  (Answer at ¶¶ 53-125.)  On July 11, 2003, Plaintiff and Counterclaim-Defendant Brown Answered the Counterclaims.  (Counterclaim Answer, generally.)  On August 20, 2003, Defendant and Counterclaim Plaintiff Sixteen moved for summary judgment on the issue of res judicata.  On November 3, 2003, Judge Motley dismissed Plaintiff's claims against Fross Zelnick pursuant to Fed. R. Civ. P. 12(c).  On December 12, 2003 the case was reassigned to this Court.  On November 3, 2005, this Court denied Summary Judgment for Defendant and Counterclaim Plaintiff Sixteen on the issue of res judicata.  That denial was then followed by a motion for reconsideration and various other non-dispositive motions.  Additional relevant procedural history is set forth in the docket for Case Number 02 Civ. 4630.

Defendant filed this summary judgment motion on September 15, 2008 and it was fully submitted on November 3, 2008.

III.   DISCUSSION

A. Summary Judgment Standard

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000).   Genuine issues of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party."   Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant."   Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).   While a court must always "resolv[e] ambiguities and draw[ ] reasonable inferences against the moving party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson), the non-movant may not rely upon "mere speculation or conjecture as to

10

the true nature of the facts to overcome a motion for summary

judgment."  Id. at 12.  Instead, when the moving party has

documented particular facts in the record, "the opposing party

must 'set forth specific facts showing that there is a genuine

issue for trial.'"  Williams v. Smith, 781 F.2d 319, 323 (2d Cir.

1986) (quoting Fed. R. Civ. P. 56(e)).  Establishing such facts

requires going beyond the allegations of the pleadings, as the

moment has arrived "'to put up or shut up.'"  Weinstock v.

Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation

omitted).  Unsupported allegations in the pleadings thus cannot

create a material issue of fact.  Id.

In the case at bar, even after resolving all ambiguities and

drawing all reasonable inferences in favor of the Plaintiff,

Defendants are nevertheless entitled to Summary Judgment.


B. Laches

Defendant moves for summary judgment claiming that

Plaintiff's suit is barred by the doctrine of laches. (Def. Mem.

of Law at 8.)

The Second Circuit has "long held in the context of

trademark actions that '[w]here a person entitled to exclusive

use of a trademark is guilty of unreasonable delay in asserting

his rights against an infringer ..., or acquiesces in the

latter's use, ... a court of equity has the discretionary power ... to deny injunctive relief or an accounting.'" <u>ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.</u>, 314 F.3d 62, 67 (2d Cir. 2002) (<u>citing</u> <u>Carl Zeiss Stiftung v. VEB Carl Zeiss Jena</u>, 433 F.2d 686, 703 (2d Cir. 1970) (citations and internal quotation marks omitted)).  In addition, the Circuit has held that the defense of laches must be resolved before reaching the merits of plaintiff's trademark claims. <u>Black Diamond Sportswear, Inc. v. Black Diamond Equipment, Ltd.</u>, 2007 WL 2914452, 1 (2d Cir. 2007).  "Laches will apply where (1) plaintiff had knowledge of defendant's use of its marks, (2) plaintiff inexcusably delayed in taking action with respect to defendant's use, and (3) defendant suffered prejudice as a result."  <u>Id.</u> (<u>citing</u> <u>Saratoga Vichy Spring Co., Inc. v. Lehman</u>, 625 F.2d 1037, 1040 (2d Cir. 1980)).


          1. Knowledge

     The facts here are similar to those noted by the Circuit in the Black Diamond Sportswear case.  <u>Black Diamond Sportswear, Inc.</u>, 2007 WL 2914452. In that case the Second Circuit has held that "[a] trademark owner is chargeable with such knowledge as he might have obtained upon [due] inquiry."  <u>Id.</u> at *3. (citations omitted) (and further "noting that trademark owner has 'duty to

police its rights against infringers'"). The Court found undisputed that the Plaintiff Black Diamond Sportswear ("BDS") was aware of Defendant Black Diamond Equipment's ("BDE") use of the Black Diamond mark on ski equipment as early as 1990; BDS brought suit in 2003. The Court found that "the possibility of it [BDE] expanding [from ski equipment] into skiwear was hardly far-fetched. Had BDS exercised due diligence in policing its mark, it would readily have learned that BDE was, in fact, selling skiwear in direct competition with plaintiff's clothing line as early as 1990." Id. Likewise, in this case Plaintiff was plainly aware of Defendants use of the AGATHA mark when she brought suit in 1987. Her duty to police her mark was, therefore, made easier by the fact that the potential infringer was known to her. It is "hardly far-fetched" for Plaintiff to have assumed that Defendant would change the font or otherwise update the look of their business.

What's more, in this case, Plaintiff seems to have admitted that Defendant changed the font of their "Agatha" mark in 1991 prior to her discontinuing her 1987 suit before Judge Keenan. (Pl. Dep. 251:23-252:3, "I never would have imagined that he would change the font to one almost identical to mine and he did so three weeks before I signed that stipulation without my knowledge in France, never used the other one again ever.")

13

However, she now states that, by in that statement, she merely "draws the conclusion that such use began in 1991 for the purposes of answering the question based on facts posed by the examiner." (Pl. 56.1 Stmt. at ¶ 20.)  Nevertheless, Plaintiff has submitted no evidence tending to contradict Defendant's statement that they used the mark, "Agatha", in Avante Garde font without the term "Paris" in 1987.  Rather, Plaintiff continually refers the Court to Judge Keenan's opinion "for an accurate statement of Defendant's use of the mark in the United States." (E.g. Pl. 56.1 Stmt. at ¶ 21.)  However, this entire suit is based on the notion that Defendant changed their font and dropped the use of the term Paris; Plaintiff has offered the Court no evidence as to when that might have begun, except to note that she first had actual knowledge of the font change in 1997 when her husband picked up Defendant's catalog while visiting the United States.  (Def. 56. 1 Stmt. at ¶ 39.)

However, even drawing all inferences in her favor, Plaintiff must be held to knowledge of the change in 1991.  If she had exercised any due diligence in policing her mark, Plaintiff would have learned of any changes in Defendant's use of the mark as early as 1991.  Even if Plaintiff does not concede that the font was changed prior to 1991, she certainly admits that she did not monitor Defendant's use of her mark.  She cannot claim ignorance

14

of Defendant's use of her mark during a period of time in which
she was actively engaged in litigation with that same Defendant.
However, as noted further below, even if Plaintiff is credited
with knowledge starting only in 1997, the defense laches is
nevertheless appropriate.


        2. Delay

        In determining whether Plaintiff's delay was sufficiently
long for laches to apply, the district court must look to the
most analogous state statute of limitation.

        Although laches is an equitable defense, employed
        instead of a statutory time-bar, analogous statutes
        of limitation remain an important determinant in the
        application of a laches defense. Because the Lanham
        Act establishes no limitations period for claims
        alleging unfair competition or false advertising,
        and because there is no corresponding federal
        statute of limitations, we look to 'the most
        appropriate' or 'the most analogous' state statute
        of limitations for laches purposes....That statute
        of limitations then determines which party possesses
        the burden of proving or rebutting the defense.

Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir.

1996). "[P]rior to the running of the most closely analogous

state statute of limitations there is no presumption of laches

and the burden remains on the defendant to prove the defense.

Alternatively, once the analogous statute has run, a presumption

of laches will apply and plaintiff must show why the laches

defense ought not be applied in the case."  Black Diamond

                              15

Sportswear, Inc., 2007 WL 2914452.  Further "It is clear that
section 43(a), 15 U.S.C.A. § 1125 (1982 & West Supp.1996),
pertaining to 'false description[s] or representation[s],' is
properly analogized to New York's six year fraud statute."
Conopco, Inc., 95 F.3d at 192; (Compl. at ¶ 150).

    Exercising any due diligence, Plaintiff should have known
about the font change in 1991, eleven years prior to commencing
the current suit.  Therefore, the burden shifts to the Plaintiff
to show why laches should not be applied in this case.  Plaintiff
argues that she was "publically battling infringers from 1987-
2007 and was not required by law to battle more than one
infringer at a time."  (Pl. Mem. of Law at 10.)  As an initial
matter, she provides no documentation in support of her argument
that she was "doing battle" with other infringers between 1989
and 2001.  In her affidavit, she merely claims (without citation
to any support) that "in the mid to late 1990s I entered into
litigation with the owner of www.agatha.com to gain ownership of
the site."  (Brown Decl. at ¶ 15.)  The other "battles" she
alleges were commenced in 2001 and 2003.  (Id. at ¶¶ 16, 17, 18.)
The fact that she may have been in litigation in the "mid to late
1990s" over the use of the www.agatha.com domain name is an
insufficient basis for failing to give Defendant any notice
whatsoever of her intent to sue.  Plaintiff has failed to

16

overcome the burden of demonstrating that her delay of a period
longer than six years was excusable.   The fact that Defendant has
put in uncontroverted evidence that they made the controversial
font change prior to the conclusion of her prior suit, in 1991,
and Plaintiff then waited eleven years to notice any sort of
complaint whatsoever, is an inexcusable delay giving rise to the
defense of laches.   (Def. Ex. 1-5.)

        However, even if the Court were to base its determination on
Plaintiff's own admission that she learned of Defendant's font
change in 1997, the defense of laches is nevertheless
appropriate.   Running the clock from 1997 does not entitle the
Defendant to a shift in burden given that 1997 is only five years
prior to the commencement of the current suit in 2002, and less
than the six year analogous state statute of limitation.
Nevertheless, even without the shifted burden, Defendants must
prevail on these facts.   Other Courts in this District have
applied laches on a three and one half year delay between actual
knowledge and the commencement of a suit.   <u>Trustees of Columbia
University v. Columbia/HCA Healthcare Corp.</u>, 964 F.Supp. 733, 753
(S.D.N.Y. 1997) (finding that "[f]rom the beginning of 1993 until
September 1996, the plaintiff was aware of the defendant but did
not express any objection to the defendant regarding its use of
the "Columbia" name."). Laches is, ultimately, an equitable

remedy, and the Court has the discretionary power "to deny
injunctive relief or an accounting." ProFitness Physical Therapy
Ctr., 314 F.3d at 67; (citing Zeiss, 433 F.2d at 703 (2d Cir.
1970)). Here Plaintiff's justifications for delay, that she was
"doing battle" with other infringers, even if true, fails to
explain why she did not even notify the Defendant of her
complaint. The fact of her living and working in Aruba is
similarly unavailing. Accordingly, applying the five years
Plaintiff acknowledges having waited to file suit, Plaintiff's
delay is inexcusable.


### 3. Prejudice

Finally, in order to prevail on the affirmative defense of
laches, a defendant must prove that it has been prejudiced by the
plaintiff's unreasonable delay in bringing the action. See Tri-
Star Pictures, Inc. v. Leisure Time Prods., B.V., 17 F.3d 38, 44
(2d Cir.), cert. denied, 513 U.S. 987 (1994); Saratoga Vichy
Spring Co. v. Lehman, 625 F.2d 1037, 1040 (2d Cir. 1980). A
defendant has been prejudiced by a delay when the assertion of a
claim available some time ago would be "inequitable" in light of
the delay in bringing that claim. Id. Specifically, prejudice
ensues when a "defendant has changed his position in a way that
would not have occurred if the plaintiff had not delayed."

Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192 (2d Cir. 1996).

Here in the eleven years between the conclusion of the first suit and the commencement of this one, Defendant opened five additional retail locations and Agatha Diffusion opened many other retail locations. (Quiniou Decl. at ¶ 8, 9). Further, during that period, Defendant Sixteen and former Defendant Agatha Diffusion spent over a million dollars promoting the Agatha brand. (Id. at ¶ 12.) By waiting at least five, and as many as eleven, years to assert her present claims "Plaintiff precluded the possibility that the Defendant could effectively adopt an alternative marketing position." Trustees of Columbia University, 964 F.Supp. at 753. Consequently, the Court finds that Defendant was prejudiced by Plaintiff's unreasonable delay.

For the reason stated above, Defendant is entitled to the defense of laches.


C. Progressive Encroachment

"Given the strong interest in preventing public confusion, however, a plaintiff's apparent acquiescence or delay in bringing suit does not necessarily bar relief." See Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 498 (2d Cir. 1961).

> The doctrine of progressive encroachment and the
> requirement that a plaintiff's delay must be

> unreasonable both allow the plaintiff some leeway
> in the timing of his suit.  Although a plaintiff
> cannot simply sleep on his rights, he has no
> obligation to sue until the likelihood of
> confusion looms large and his right to protection
> [has] clearly ripened.

ProFitness, 314 F.3d at 68 (2d Cir. 2002) (citations and

quotations omitted).  "The primary rationale is that a plaintiff

should not be obligated to sue until its right to protection has

ripened such that plaintiff knew or should have known, not simply

that defendant was using the potentially offending mark, but that

plaintiff had a provable infringement claim against defendant."

Id. citing Kellogg, 209 F.3d at 570-71.  "The doctrine of

progressive encroachment, therefore, focuses the court's

attention on the question of whether defendant, after beginning

its use of the mark, redirected its business so that it more

squarely competed with plaintiff and thereby increased the

likelihood of public confusion of the marks." Id. at 70.

   Plaintiff's attempt to invoke the doctrine of progressive

encroachment is entirely inapposite where, as here, there is no

allegation that the Defendant redirected their businesses at all.

Defendant continued selling costume jewelry from the time it was

initially sued in 1987 until it closed its retail stores in 2007.

There is no evidence that Plaintiff sold jewelry.  Although

Defendant admits to changing their use of the Agatha mark,

largely dropping the term "Paris" and changing the font,
Plaintiff does not even argue that Defendant's changes happened
incrementally over the relevant period.  Rather, Plaintiff
attempts to argue that the "encroachment" is Defendant's attempt
to register their use of "Agatha" on May 2, 2002.  (Pl. Mem. of
Law at 17.)  Plaintiff argues that "[o]nly with attorney Martin
Raskin's May 2, 2002 filing did Sixteen, Inc. encroach on Agatha
Brown's primary market, which included jewelry in IC 014."  (Id.)

        As an initial matter, it was former-Defendant Agatha
Diffusion, not Sixteen Inc., that filed the document at issue,
and so Sixteen can hardly be said to have "encroached" on
Plaintiff's mark.  (Pl. Ex. O.)  Furthermore, Plaintiff herself
admits that she held a trademark for "Agatha Brown" in jewelry
(IC 014) in 1991, which she abandoned in 1993; it was only in
2001 (four years after she learned of Defendant's use of her
mark) that she sought a mark for "Agatha" for jewelry (IC 014).
(Pl. Ex. A.)  Finally, Plaintiff admits that she has never sold
any jewelry products (Pl. Decl. at 131:14-16 (Q. "Have you ever
sold any jewelry products?" A. "No, and I am sorry I didn't.")
On these facts, Plaintiff cannot rely on the doctrine of
progressive encroachment; she has failed to allege that after
beginning the use of the mark "Agatha" in Avant Garde font
without "Paris", Defendant ever changed any other aspect of its

business to bring them in closer competition with Plaintiff. Plaintiff's suit was ripe, to the extent it had any merit at all, at the time Defendant changed its use of the mark.

### D. Actual Confusion

"Even where laches and acquiescence would bar damages, moreover, a court may nonetheless grant injunctive relief if it determines that the likelihood of confusion is so great that it outweighs the effect of plaintiff's delay in bringing suit." ProFitness, 314 F.3d at 68 (2d Cir. 2002) (citations and quotations omitted).

The only evidence supplied by Plaintiff in support of her claim that consumers were actually confused is her complaint that she mistakenly received emails from Sixteen's customers, and that her "customers began to think I owned boutiques worldwide." (Pl. Decl. at ¶ 27.) These unsupported, conclusory statements hardly support a finding of confusion "so great" as to outweigh the application of the laches defense.

### E. Unclean Hands

Finally, Plaintiff alleges that the equitable remedy of laches in unavailable to Defendants who have "unclean hands." Plaintiff alleges, without any factual support, that Defendant

22

engaged in fraud.  Plaintiff claims that Quiniou tried to license
the mark "Agatha" from her at some point between 1986 and 1987.
Assuming that is true, attempting to license her mark does not
amount to fraud.  That is certainly true where, as here,
Defendant did not in fact license the mark, proceeded to use it
widely, was sued, defeated a summary judgment motion, and
Plaintiff discontinued litigation.  Plaintiff also alleges that
Quiniou hired her former attorney which was "clear evidence of
Quiniou's bad faith and desire to take the AGATHA mark in
violation of Agatha Brown's rights."  (Pl. Mem. of Law at 20.)
Again, such an allegation, (hiring an attorney) even if true,
does not amount to fraud or unclean hands.  Finally, Plaintiff
argues that Defendant's "intentionally attack[ed] a market
created by Agatha Brown through stealth, deception, fraud and
subterfuge" when it filed a public document with the USPTO (Pl.
Mem. of Law at 20); such an argument is facially illogical.

### III.   CONCLUSION

The documents docketed at number 119 are hereby UNSEALED,
and shall be maintained as open records unless and until
Plaintiff brings to the Court's attention specific documents with
specific page numbers that are confidential and a rationale for
sealing those specific documents or pages.

And, for the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED in its entirety.  The Clerk of the Court is HEREBY directed to terminate all pending motions.

In this Court's August 20, 2007 Order, Plaintiff was given notice of a schedule to submit letters regarding proposed motions.  Plaintiff has not made any motion for summary judgment.  Therefore, Plaintiff has waived the opportunity to move for summary judgment on the Counterclaims against her.

The Parties are to appear at a status conference on the counterclaims and attorney fee issues on June 19, 2009 at 11:30AM.


Dated:    New York, New York
          April 28, 2009

                                    _____
                                    Deborah A. Batts
                                    United States District Judge


24